UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NEXT MILLENNIUM REALTY LLC, 101 FROST
STREET ASSOCIATES, L.P.,

                  *Plaintiffs*,

          -against-

UTILITY MANUFACTURING CO., INC., NEST
EQUITIES, INC.

                  *Defendants*.

------------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-02529 (OEM) (JMW)

ORELIA E. MERCHANT, United States District Judge:

      Plaintiffs Next Millennium Realty LLC ("Next Millennium") and 101 Frost Street Associates, L.P. ("101 Frost Street") ("Plaintiffs") bring this action under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, against defendants Utility Manufacturing Co., Inc. and Nest Equities, Inc. ("Defendants"). Compl., ECF 1, at 1. Plaintiffs assert, *inter alia*, CERCLA cost recovery and contribution claims, under CERCLA §§ 107(a) and 113(f)(1), respectively. Before the Court is Defendants' fully briefed motion for judgment on the pleadings.[1]

      For the following reasons, Defendants' motion is granted in part and denied in part.

---

[1] Defendants' Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Defs.' Mem."), ECF 39-7; Declaration of Castiglione in Support of Defendants' Motion, ECF 39-1, ("Castiglione Decl."), ECF 39-1, and the exhibits attached thereto; Plaintiffs' Memorandum of Law in Opposition ("Pls.' Opp."), ECF 40; Declaration of Devaprasad in Opposition ("Devaprasad Decl."), ECF 40-1, and the exhibits attached thereto; and Defendants Memorandum of Law in Reply ("Defs.' Reply"). ECF 39-8.

## BACKGROUND[2]

### A. Factual Background

In September of 2011, the United States Environmental Protection Agency ("EPA") listed an area of contaminated groundwater within the towns of Hempstead, New York and Oyster Bay, New York on the National Priorities List.  Compl. ¶ 14.  The area, known as the New Cassel/Hicksville Groundwater Contamination Superfund Site (the "Site"), includes an estimated 6.5 square miles that have been contaminated with hazardous substances regulated under CERCLA, including volatile organic compounds ("VOC").  *Id.* ¶¶ 14-15; Castiglione Decl. Ex. A ("EPA 2018 UAO"), ECF 39-2, ¶ 8.  Within the Site is an area known as the New Cassel Industrial Area ("NCIA"), which "encompasses approximately 170 acres of industrial and commercial property" and "was developed for industrial use during the 1950s through the 1970s."  Compl. ¶ 16; EPA 2018 UAO ¶¶ 11-12.

The parties are current or former owners and/or operators of properties located within the NCIA.  Next Millennium is the current owner of the property at 89 Frost Street, Compl. ¶ 3, and 101 Frost Street is the current owner of the property at 101 Frost Street, *id.* ¶ 5.  Defendants are current or former owners and/or operators of the property at 700 Main Street, Westbury, New York.  *Id.* ¶¶ 7, 9, 23, 24.

The Nassau County Department of Health first identified extensive VOC contamination in the groundwater beneath the Site in 1986.  EPA 2018 UAO ¶ 13.  The NCIA, which is located upgradient from the contamination, was isolated as the principal source.  *Id.*  Beginning in 1994, the New York State Department of Environmental Conservation ("NYDEC") began conducting

---

[2] The facts described herein are taken from the Complaint, together with documents incorporated into the Complaint by reference, and documents of which the Court takes judicial notice.  For the purposes of the motion for judgment on the pleadings, the Court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in Plaintiffs' favor.  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

preliminary site assessments, field investigations, and groundwater sampling. *Id.* ¶¶ 16-18. In September 2000, NYSDEC issued a Remedial Investigation/Feasibility Study ("RI/FS") Report under New York State authority for an area referred to as the "New Cassel Industrial Area Off-site Groundwater," which corresponds with what the EPA later designated as Operable Unit 1 ("OU-1"). *Id.* ¶ 18. NYSDEC determined the groundwater downgradient from the NCIA contained VOCs, including tetrachloroethylene ("PCE"), trichloroethylene ("TCE"), and 1,1,1,-Trichloroethan ("1,1,1-TCA"), in amounts that exceeded New York State standards, criteria, and guidance. *Id.* To address the environmental conditions, NYSDEC selected remedies relating to 17 facilities within the NCIA and the New Cassel Industrial Area Off-site Groundwater area. *Id.* ¶¶ 17, 19.

On March 13, 2006, NYDEC brought an action against the parties under, *inter alia*, CERCLA § 107(a), 42 U.S.C. § 9607(a), to recover past and future costs incurred in response to the release of hazardous substances within the NCIA. *See* 06-CV-1133 (SJF) (AYS), E.D.N.Y. (the "2006 Action").

During the pendency of the 2006 Action, on December 27, 2010, NYSDEC requested that EPA include the Site on the National Priorities List, which was ultimately listed on September 16, 2011. EPA 2018 UAO ¶ 22. EPA designated an area of shallow and deep groundwater contamination, within and downgradient of the NCIA, which it refers to as OU-1. Compl. ¶¶ 17-18; EPA 2018 UAO ¶ 23. EPA further divided OU-1 into the Eastern Plume, Central Plume, Western Plume, and OU-1 Deep Plume. Compl. ¶ 20. Based on the results of EPA's Supplemental RI/FS for OU-1, EPA issued a Record of Decision ("ROD") on September 30, 2013, selecting a remedy for OU-1 including in-situ and ex-situ groundwater treatments, in-situ chemical treatment of high concentration contaminant areas, implementation of long-term groundwater monitoring,

3

development of a Site Management Plan, institutional controls maintaining existing local requirements, and issuance of informational devices.  Compl. ¶ 19; EPA 2018 UAO ¶ 26.

On February 9 2016, Judge Feuerstein issued an opinion and order in the 2006 Action, finding Next Millennium and 101 Frost Street liable "under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for response costs incurred by the State in responding to contamination at and emanating from the NCIA, and specifically into the off-site area referred to herein as State OU-3/EPA OU-1." *New York v. Next Millenium Realty, LLC*, 160 F. Supp. 3d 485, 526 (E.D.N.Y. 2016).  This resulted in a consent decree between NYDEC and Plaintiffs, approved by Judge Feuerstein on June 1, 2016.  Castiglione Decl., Ex. D ("State-Frost Street Settlement Agreement"), ECF 39-5; *see* 06-CV-1133, ECF 483.[3]  Defendants also entered into a settlement agreement with the State resolving the State's cost recovery actions against them in January 2015.  Castiglione Decl., Ex. E, ("State-Utility Parties' Settlement Agreement"), ECF 39-6.

On March 22, 2018, EPA issued a Unilateral Administrative Order ("UAO") under CERCLA § 106(a).  Compl. ¶¶ 21-22; EPA 2018 UAO at 1.  The UAO directed the parties to perform a Remedial Design ("RD") for OU-1 at the Site, EPA 2018 UAO ¶¶ 2, 45, because of their role as responsible parties within the meaning of CERCLA §107(a)(1), *id.* ¶¶ 29, 38, 39, 42, 44(d). EPA then issued an amended UAO on June 15, 2019, ordering the parties to implement another

---

[3] Without admitting liability, Plaintiffs paid the State $700,000 to resolve "Matters Addressed" in the settlement, $455,00 of which was allotted to the State's past costs for NYDEC's OU-3. *Id.* at 5-6.  "'Matters Addressed' is defined to include claims that were, or could now or hereafter be, asserted by the State against the [Plaintiffs] arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the NCIA and/or at or from the sites alleged to have been owned or operated by the Frost Street Defendants, including but not limited to any and all injuries to natural resources." *Id.* at 5, ¶ 2.  "Matters Addressed does not include (1) the State's claim for costs . . ." under CERCLA § 104(c)(3), and (2) the State's claims for response costs arising out of the NYDEC's OU-1 and OU-2. *Id.* at 5-6, ¶ 2.  The agreement also provides that Plaintiffs "may assert any claims or causes of action against any person other than the State, to the extent permitted by law, for any costs, damages, contribution or attorney's fees arising out of any of the Matters Addressed in this Fourth Supplemental Consent Decree." *Id.* at 7, ¶ 7.

4

Remedial Investigation/Remedial Design ("RI/RD") and deeming them "jointly and severally liable for response costs at the Site." Compl. ¶¶ 25, 27.

Plaintiffs allege that they have complied with EPA's amended UAO and that, as a result, they have incurred and continue to incur response costs to implement the RI/RD, including engineering fees, attorney's fees, and other expenses and costs related to the mitigation of environmental conditions at the Site. *Id.* ¶¶ 28-29. In addition, Plaintiffs have incurred response costs associated with remediation of the Eastern Plume and the OU-1 Deep Plume prior to the issuance of the UAO. *Id.* ¶¶ 32-40.

Plaintiffs allege that, as set out in the UAO, because "Defendants are either current, former or successor operators, arrangers and/or owners of CERCLA sites and have contributed to" Site contamination and the Plumes' groundwater contamination, Defendants are jointly and severally liable for past and future response costs. *Id.* ¶¶ 30-40. Despite this, Defendants have not incurred or shared in any past, present, or future response costs for which they are jointly and severally liable. *Id.* ¶¶ 30-31, 35-37.

Plaintiffs seek monetary payment for "all costs incurred by Plaintiffs to the date of judgment," under § 107(a), "Defendants' share of response costs incurred by Plaintiffs to the date of judgment," under § 113(f)(1), a "declaratory judgment holding Defendants liable for all response costs incurred by Plaintiffs to date, to be incurred in the future," under §§ 113(g)(2), 107(a)(4)(B), and the DJA, as well as common law indemnification and restitution for any response costs or damages. *Id.* at 13.

**B. Procedural History**

Plaintiffs initiated this action by filing of the complaint on May 3, 2022, Compl., and Defendants filed their answer and counterclaims on July 8, 2022, ECF 14. The parties appeared

for an initial conference before Magistrate Judge Wicks on July 13, 2022. ECF 15. Plaintiffs filed

an answer to Defendants' counterclaims on July 26, 2022. ECF 17.

The case was reassigned to the undersigned on July 7, 2023, and throughout late 2023 and

2024, the parties scheduled and requested adjournments for numerous settlement conferences. *See*

ECF 19, 20, 21, 22, 24, 25, 26, 27, 28, 30. A settlement conference was held on April 20, 2024;

progress was made but settlement was ultimately unsuccessful. *See* Minute Order dated 4/20/2024.

All fact and expert discovery closed on December 31, 2024. *See* Minute Order dated 5/13/2024.

On January 16, 2025, Defendants requested a premotion conference in anticipation of the instant

motion for judgment on the pleadings, ECF 34, which the Court denied and instead set a briefing

schedule. *See* Order dated January 24, 2025.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings." FED. R. CIV. P. 12(c). "The same standard applicable to Fed. R.

Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the

pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive a

motion for judgment on the pleadings under to Rule 12(c), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Matzell v.

Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009));

*Goldberg v. Pace Univ.*, 88 F.4th 204, 210 (2d Cir. 2023). "A claim is plausibly alleged 'when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'" *Matzell*, 64 F.4th at 433 (quoting *Iqbal*, 556 U.S.

at 678); *see Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (quoting *Iqbal*, 556 U.S.

at 678). The assumption that allegations contained in the complaint are true is "inapplicable to

legal conclusions." *L-7 Designs* 647 F.3d at 430 (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). A motion for judgment on the pleadings should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of America (UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam).

## DISCUSSION

Defendants seek to dismiss the Complaint under Federal Rule of Civil Procedure 12(c), arguing that Plaintiffs' first through fifth causes of action should be dismissed for failure to state a claim, and that the Court should decline to exercise supplemental jurisdiction on the remaining state law claims. The primary issue presented to the Court is under which CERCLA provision Plaintiffs may bring suit to recover response costs, if at all.

### A. Cost Recovery and Contribution under CERCLA

CERCLA was enacted to ensure that those responsible for any damage, environmental harm, or injury from hazardous substances released into the environment bear the costs of their actions. *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) (quoting S. Rep. No. 96-848, at 13 (1980)). "The Act seeks 'to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts [are] borne by those responsible for the contamination.'" *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 6 (2020) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014)).

The statute directs the EPA to compile a prioritized list of contaminated sites, commonly referred to as "Superfund Sites," on the National Priorities List. 42 U.S.C. § 9605. It in turn "empowers the federal government and the states to initiate comprehensive cleanups and to seek recovery of expenses associated with those cleanups." *Niagara Mohawk*, 596 F.3d at 120; *see §§*

7

9604, 9615, 9607(a)(4)(A).  Alternatively, the federal government may compel responsible parties to perform the cleanup.  § 9606(a).

"Under CERCLA, responsible parties are strictly liable for the costs of the cleanup." *Revitalizing Auto Communities Env't Response Trust v. Nat'l Grid USA*, 92 F.4th 415, 439 (2d Cir. 2024) ("*RACER*") (citing 42 U.S.C. § 9607(a)).  However, the statute "offers a reprieve" by providing responsible parties with three avenues to recoup costs from potentially responsible parties ("PRPs").  *Id.*  PRPs are "parties that may be held accountable for hazardous waste in particular circumstances."  *Atl. Richfield Co.,* 590 U.S. at 20.  Indeed, CERCLA "authorize[s] parties in different procedural positions to recover costs incurred in cleaning up contamination: '(1) section 107(a), which permits the general recovery of cleanup and prevention costs; (2) section 113(f)(1), which creates a contribution right for parties liable or potentially liable under CERCLA; and (3) section 113(f)(3)(B), which creates a contribution right for parties that have resolved their liability by settlement.'" *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 89 (2d Cir. 2009) (quoting *Consol. Edison*, *Co. of New York v. UGI Utilities, Inc.*, 423 F.3d 90, 94 (2d Cir. 2005)); *accord Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 163 (2004).

Section 107 authorizes the United States, a state, or "any other person," to seek reimbursement for all removal or remedial costs associated with the hazardous materials on the property, provided that such actions are consistent with the National Contingency Plan—the federal government's criteria for responding to the release of hazardous substances.  42 U.S.C. § 9607(a)(4).  "'Any [other] person' 'includes a PRP that voluntarily cleans the site.'"  *RACER*, 92 F. 4th at 439 (quoting *Niagara Mohawk*, 596 F.3d at 121)); *accord Consol. Edison*, 423 F.3d at 100 (observing that §107 "permits a party that has not been sued or made to participate in an administrative proceeding, but that, if sued, would be held liable under section 107(a), to recover

necessary response costs incurred voluntarily, not under a court or administrative order or judgment").

Added as part of the Superfund Amendments and Reauthorization Act ("SARA"), 100 Stat. 1613, Congress expressly authorized contribution under CERCLA with § 113. *Niagara Mohawk*, 596 F.2d at 121. That provision provides two avenues of relief for contribution. The first, under § 113(f)(1), a PRP who has been sued under §§ 106 or 107 may seek contribution from any PRP during or following any civil action brought under those Sections. 42 U.S.C. §9613(f)(1). A private party may only pursue a claim for contribution under § 113(f)(1) if it has been subject to a "civil action" initiated under §§ 106 or 107. *Cooper Indus.*, 543 U.S. at 165. Section 113(f)(3)(B) provides that once a party has settled its CERCLA liability with the government, including in an "administrative or judicially approved settlement," it may seek contribution from others that are not a party to that settlement. 42 U.S.C. § 9613(f)(3)(B). Section 113(f) claims must be brought within three years of the date of judgment in any action for recovery of costs or damages, or the date of an administrative or judicially approved settlement. *Id.* § 9613(g)(3); *see RACER*, 92 F.4th at 439.

## B. Interplay between §§ 113(f) and 107(a)

The Supreme Court has made clear that §§ 113(f) and 107(a) are "complementary yet distinct," *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 138 (2007), while at the same time recognizing that the two provisions provide "similar and somewhat overlapping remed[ies]," *Key Tronic Corp. v. United States*, 551 U.S. 809, 816 (1994). For example, a PRP may undertake its own response costs on its own accord – making it eligible for a cost recovery action under § 107(a). *Atl. Rsch.*, 551 U.S. at 139, n.6. Prior to or after incurring those response costs, the PRP may have settled with the government – making it eligible for a contribution action under §§ 113(f)(3)(B),

*see id.* – or the PRP may be sued by a third party under § 107(a) – making it eligible for a contribution action under § 113(f)(1), *see DMJ Assocs., L.L.C. v. Capasso*, 181 F. Supp. 3d 162, 168 (E.D.N.Y. 2016).

Indeed, in *United States v. Atlantic Research*, the Supreme Court left open the question of whether a responsible party who has incurred cleanup costs *after* settling with the government may seek recovery of such costs under § 107, § 113(f), or both.  551 U.S. at 139 n. 6; *see RACER*, 92 F.4th at 440, n. 11; *see also Niagara Mohawk*, 596 F.3d at 127 n. 17.  Since *Atlantic Research*, every federal court of appeals to have considered the question has concluded that § 107(a) and 113(f)(3)(B) are mutually exclusive remedies.  *See, e.g.*, *Niagara Mohawk*, 596 F.3d at 128 (party who settled liability as part of administrative consent could only proceed under § 113(f)(3)(B), despite incurring direct response costs); *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 709 (3d Cir. 2019) (contribution immunity as a result of consent order barred cost recovery action under § 107); *Hobart Corp v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 767 (6th Cir. 2014) (settlement triggered availability of § 113(f)(3)(B) contribution claim, barring § 107 recovery); *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2013) (same); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603-04 (8th Cir. 2011) (same);  *Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1117 (9th Cir. 2017) (same); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236-37 (11th Cir. 2012).  That is, once a party has resolved its CERCLA liability through an administrative or judicial settlement and therefore triggered the availability of a contribution action under § 113(f)(3)(B), that party must proceed under § 113(f)(3)(B), even if a cost recovery action under § 107(a) would otherwise be available.

What is less clear is whether the availability of a § 113(f)(1) action, arising out of the government's or a third-party's suit for cost recovery, bars a § 107(a) claim.  The Second Circuit

has not squarely addressed the issue, and at least one court in this district has held that that it does not. *See DMJ Assocs.*, 181 F. Supp. 3d 162. In *DMJ Associates L.L.C. v. Capasso*, the plaintiff had been sued by other PRPs under § 107 but had not resolved its liability to the United States or the State of New York. *Id.* at 167. The court held that, under *Atlantic Research*, plaintiffs could maintain both an action under § 107(a), solely for recovery of directly incurred response costs, and a separate action under § 113(f)(1) for funds paid in contribution. *Id.* at 168-69. By contrast, in a case brought by Plaintiffs to recover the defendant United States Department of Energy's share of funds spent responding to the NCIA and resolving its liability to NYSDEC, the court reasoned in dicta that "the Consent Orders/Modified Consent Orders, the NYSDEC OU-3 Settlement, and the UAO (and possibly also the commencement of the 2006 Action) all trigger Section 113(f) as the exclusive avenue for relief with respect to Plaintiffs' costs at the Frost Street Sites and EPA OU-1/DEC OU-3." *101 Frost St. Assocs., L.P. v. U.S. Dep't of Energy*, 17-CV-03585 (JMA) (ARL), 2019 WL 4415387, at *10 (E.D.N.Y. Sept. 16, 2019).[4] Other circuits have also taken this view. In *NCR Corp. v. George A. Whiting Paper Co.*, the Seventh Circuit "easily dispatched" of the plaintiff's 107(a) claim for cost recovery where it had been sued by the EPA to enforce a unilateral administrative order; "thus, a section 113(f)[(1)] action is available . . . [and] section 107(a) is not available." 768 F.3d 682, 691-92 (7th Cir. 2014).

---

[4] The holding in *101 Frost St. Associates L.P. v. United States Department of Energy* appears to have rested primarily on a finding that Plaintiff had a 113(f)(3)(B) claim. *See id.* The parties did not dispute that Plaintiffs had a § 113(f)(3)(B) claim available, and despite stating that Plaintiffs "also appear[ed]" to have a § 113(f)(1) claim arising out of NYSDEC's 2006 Action, the "sole disputed issue [was] whether Plaintiffs can also pursue a cost recovery action under Section 107(a), in addition to the contribution action under Section 113(f)[.]" *Id.* at *8. Further, the court noted that "Plaintiffs assume that the UAO either fully resolves their liability for the purposes of Section 113(f)(3)(B) or qualifies as a 'civil action' under Section 113(f)(1) and, thus, entitles them to contribution for the costs incurred in effectuating the EPA's order. The Moving Defendants do not challenge this." For the reasons discussed below, *see infra* Section C, the Court disagrees.

This Court agrees with the latter view. To allow a plaintiff who qualifies for a §113 contribution claim to proceed under § 107(a) "would in effect nullify the SARA amendment and abrogate the requirements congress placed on contribution claims under [42 U.S.C.] § 9613." *Niagara Mohawk,* 596 F.3d at 128. "'When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect.'" *Id.* (quoting *Stone v. INS,* 514 U.S. 386, 397 (1995)).[5]

## C.  Availability of § 113(f)(1) Claim

Because the Court finds that the availability of either a § 113(f)(1) or 113(f)(3)(B) claim will bar a § 107 claim, the Court must first determine whether Plaintiffs have an available claim under § 113(f)(1).[6]

In determining whether Plaintiff has a cause of action under § 113(f)(1), the Court must resolve whether a unilateral administrative order issued under § 106 qualifies as a "civil action." In *Cooper Industries, Inc. v. Aviall,* the Supreme Court made clear that a party may only pursue a § 113(f)(1) contribution action if it had been subject to a "civil action" as specified in that section. 543 U.S. at 168. However, it declined to address whether an administrative order issued under §

---

[5] A second rationale – CERCLA's contribution protection under § 113(f)(2) – is often cited as an additional justification for the mutual exclusivity of § 113(f) and § 107(a). *See, e.g., Solutia,* 672 F.3d at 1237; *Agere Systems Inc. v. Advanced Env't Tech. Corp.,* 602 F.2d 204, 228 (3d Cir. 2010) (noting that allowing a party to pursue a claim under § 107 would theoretically allow that party to impose joint and several liability on a defendant without any fear of a counterclaim); *but see Bernstein,* 733 F.3d at 205 (finding contribution bar justification unpersuasive). However, that subsection protects only those parties who have resolved their liability with the United States or a State from other private claims for contribution and is thus inapplicable to § 113(f)(1).

[6] Plaintiffs have not alleged a cause of action under § 113(f)(3)(B), *see* Compl., nor, as Defendants argue, could they. The UAO in this case, unlike a consent decree or settlement, does not resolve Plaintiffs' CERCLA liability for the areas at issue and therefore do not meet the statutory trigger. *See* 2018 UAO at 25 ("Nothing in this order limits the rights and authorities of the EPA and the United States . . . To bring an action against Respondents under Section 107 of CERCLA . . ."). Nor does the settlement with New York State, which excluded any available remedies by the United States, give rise to such a claim for contribution of funds stemming from EPA's UAO. *See* State-Frost Street Settlement Agreement at 5.

106, like the UAO at issue here, qualifies as a civil action. *Id.* at 168 n.5 (citing 42 U.S.C. § 9613(f)(1)).

Defendants argue that only "lawsuits" qualify as civil actions to trigger an action under § 113(f)(1). Defs.' Mem. at 22. As Plaintiffs point out, Pls.' Opp at 15, the Second Circuit has not decided the issue, *see AMW Material Testing, Inc. v. Town of Babylon*, 187 Fed. App'x 24, 26 (2d Cir. 2006) (summary order), and several district courts are split, *compare Emhart Indus., Inc. v. New England Container Co., Inc.,* 478 F. Supp. 2d 199, 203 (D.R.I. 2007) (holding that § 113(f)(1) relief is unavailable for parties who are "merely subject to administrative orders, as opposed to final consent decrees, judgments, or apportionments of liability"); *Raytheon Aircraft Co. v. United States,* 435 F. Supp. 2d 1136, 1142-43  (D. Kan. 2006) (concluding that a unilateral administrative order is not a "civil action" for the purposes of § 113(f)(1)); *Pharmacia Corp. v. Clayton Chem. Acquisition LLC,* 382 F.Supp.2d 1079, 1087 (S. D. Ill. 2005) (same); *Blue Tee Corp. v. ASARCO, Inc.,* 2005 WL 1532955 at *3–4 (W. D. Mo. June 27, 2005) (same); and *United States v. Taylor,* 909 F. Supp. 355, 365 (M.D.N.C. 1995) ("A PRP which conducts an environmental cleanup will not necessarily have suffered a judgment or court approved settlement and, thus cannot bring a contribution action—and this includes one subjected to a Section 106 administrative order."); *with Carrier Corp. v. Piper,* 460 F. Supp. 2d 827, 840-41 (W. D. Tenn. 2006) (finding a UAO is a "civil action" under Section 113(f)(1), reasoning that the burden it places on a party is similar to that of a court proceeding); and *PCS Nitrogen, Inc. v. Ross Dev. Corp.,* 104 F. Supp. 3d 729, 742–43 (D.S.C. 2015) (same); *see also supra* n. 4.

To resolve the meaning of a statutory term, the Court must "begin with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012). "A particular statute's 'plain

meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute.'" *Id.* (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003)).   Only if a court finds a statute ambiguous should it then resort first to canons of statutory construction and, if the meaning remains ambiguous, then to legislative history to resolve said ambiguity. *Id.*

Applying these principles, the Court finds that a unilateral administrative order is not a "civil action" under the meaning of § 113(f)(1).  Section 113(f)(1) defines the term in reference to CERCLA's abatement action and liability provisions: "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following *any civil action under section 9606 of this title or under section 9607(a) of this title.*" 42 U.S.C. § 9613 (emphasis added).  Turning to § 106, as relevant here, it provides that the President, and by delegation the Administrator of the EPA, *see Key Tronic*, 511 U.S. at 814,

> may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.  The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

42 U.S.C. § 9606(a).  In other words, it distinguishes between two avenues of enforcement: by a lawsuit brought in a federal district court or by taking "other action," such as an administrative order. *See Gen. Elec. Co. v. E.P.A.*, 360 F.3d 188, 190 (D.C. Cir. 2004) ("under § 106(a), EPA may issue unilateral administrative orders ('UAOs') after notice to the affected state, directing the responsible parties to clean up the hazardous sites" and "[i]f a party fails to comply, EPA may file a civil action in the district court to enforce the UAO").  Subsection (b) again differentiates between court actions and administrative ones: 106(b)(1) provides that if a party fails to comply with any order under 106(a) it may be fined as a result of a civil lawsuit.  42 U.S.C. § 9606.  Thus, by using

14

"civil actions" as opposed to "any action" under § 106, § 113(f)(1) appears to refer to the subset of actions under § 106 authorizing suits in a federal district court. The Federal Rules of Civil Procedure are in accord: "There shall be one form of action – the civil action," FED. R. CIV. P. 2, which "is commenced by filing a complaint with the court," FED. R. CIV. P. 3. *Pharmacia*, 382 F. Supp. 2d at 1087.

Contrasting § 113(f)(1)'s language with the alternative avenue for relief under § 113(f)(3)(B) further supports the Court's conclusion. While § 113(f)(1) conditions a cause of action on a "civil action," § 113(f)(3)(B) conditions it on an "administrative or judicially approved settlement." The language in the latter provision makes clear that the drafters acknowledged a distinction between an administrative action and a judicial one. In light of this distinction, it seems unlikely that Congress would have seen the need to distinguish between a "administrative" or "judicially" approved settlement if it intended that an administrative order falls within the meaning of "civil action." *See Louisville & Nash. R. R.Co. v. Mottley,* 219 U.S. 467, 475 (1911) ("We must have regard to all the words used by Congress, and as far as possible give effect to them.").

Additionally, the statute of limitations period contained in § 113 further supports that an administrative order is not a "civil action." Section 113(g)(3) "provides two corresponding 3-year limitations periods for contribution actions, one beginning at the date of judgment, § 113(g)(3)(A), and one beginning at the date of settlement, § 113(g)(3)(B). "Notably absent from § 113(g)(3) is any provision for starting the limitations period if a judgment or settlement never occurs, as is the case with a purely voluntary cleanup." *Cooper Indus.*, 543 U.S. at 167. Administrative orders do not result in "judgments,"[7] and thus, if such orders did give rise to a contribution action on

_____

[7] Black's Law Dictionary defines a "judgment" as "A court or other tribunal's final determination of the rights and obligations of the parties in a case; also, the act or action of making such a determination." Black's Law Dictionary (12th ed. 2024).

§ 113(f)(1), a party would effectively be free to initiate its claim at any time – undermining legal certainty and fairness by exposing defendants to indefinite liability.

Accordingly, because the unilateral administrative order in this case does not qualify as a "civil action," Plaintiffs' second cause of action for contribution under CERCLA § 113(f)(1) is hereby dismissed.[8]

### D.  Availability of § 107(a) Claim

Defendants maintain that Plaintiff may not pursue claims under § 107(a) because Plaintiffs did not incur its response costs "voluntarily" but were "forced to act pursuant to the EPA's unilateral administrative order."  Defs.' Mem. at 20.

The Second Circuit has made clear that "In the same manner that section 107(a) is not limited to solely to 'innocent' parties, § 107(a) does not specify that only parties who 'voluntarily' remediate a site have a cause of action."  *W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.*, 559 F.3d 85, 92 (2d Cir. 2009) (citing *Atl. Research*, 551 U.S. at 137).  In that case, the fact that the plaintiff entered into a consent order before incurring response costs was "of no legal significance under the statute."  *Id.* at 92.  Rather, "The relevant inquiry with respect to section 107(a) is whether the party undertook the remedial actions without the need for the type of administrative or judicial action that would give rise to a contribution claim under section 113(f)."  *Id.* at 94.  Because the

---

[8] Although not raised by either party, the Court also notes that New York State's prior civil action also does not give rise to a § 113(f)(1) claim here.  In this action, Plaintiff seeks recovery of response costs related to the EPA's UAO, not such costs stemming from its liability settled with NYSDEC.  Were the Court to consider that settlement or litigation as a statutory trigger for costs related to EPA's order, the statute of limitations would risk barring Plaintiffs from suit before they were ever apprised of this action: the EPA's UAO was issued years following Plaintiffs' resolution of liability with the State.  "Under CERCLA, states have causes of action independent from the federal government. . . . CERCLA views the states as independent entities that do not require the EPA's express authorization before they can act," *Niagara Mohawk*, 596 F.3d at 126, and the States' role in effectuating the purposes of CERCLA is "autonomous."  *Id.* at 125.

Court concluded that Plaintiffs do not have a cause of action under either provision of § 113(f) with respect to the costs incurred resulting from EPA's unilateral administrative order, it follows that Plaintiffs may seek to recoup those costs under § 107. Plaintiffs chose to comply with the EPA's order and therefore "saved the parties and the government litigation costs, and presumably also limited ongoing contamination by promptly remediating the site." *Id.*

Defendants argue that there is Second Circuit authority contradicting the holding in *W.R. Grace*. Defs.' Mem. at 21 (citing *RACER*, 92 F.4th at 439 (§ 107 authorizes suits by "[a]ny person" which "includes a PRP that *voluntarily* cleans the site." (quoting *Niagara Mohawk*, 596 F.3d at 121) (emphasis added)). However, the authority cited is not contradictory in that the language cited to in *RACER* is clearly not exclusionary – a person who voluntarily cleans the site *may* bring suit, but they are not the only party who may do so. This is consistent with prior Second Circuit authority. Similar to *W.R. Grace*, the plaintiff in *Schaefer v. Town of Victor* entered into multiple consent orders issued under § 107(a). 457 F.3d 188, 191-92 (2d Cir. 2006). The court held that plaintiff could bring a cause of action under § 107 for response costs incurred prior to the final consent order, even though such funds were expended under extensive agency oversight. *Id.*

In short, nothing in the plain language of § 107(a), Supreme Court, or Second Circuit authority requires a reading that the PRP incurred response costs "voluntarily." The Court will not, as Defendants urge, "read[] words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997). Interpreting CERCLA to bar a plaintiff from recovering from another responsible party would be inconsistent with the statute's purpose of ensuring that each party bears its fair share of cleanup costs and encouraging cooperation with government

17

agencies. *W.R. Grace*, 559 F.3d at 95. Accordingly, the Court finds that Plaintiffs may bring a cause of action to recover response costs under CERCLA § 107(a).

### E. Failure to State a Claim under § 107(a)

Lastly, Defendants argue that Plaintiffs have failed to state a claim under § 107(a) and have made only "threadbare recitals of the elements of a cause of action under CERCLA that are nothing but conclusory statements and mere speculation." Defs.' Mem. at 24.

To state a claim for relief for liability under CERCLA § 107(a), a plaintiff must allege that: (1) the defendant is an "owner" or is otherwise liable under 42 U.S.C. § 9607(a)(1)-(4); (2) the site is a "facility" as defined by 42 U.S.C. § 9601(9); (3) there has been a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or the threat; and (5) the costs and response conform to the National Contingency Plan. *See Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 80 (2d Cir. 2014); 42 U.S.C. 9607(a).

Plaintiffs allege that Defendants are current or former owners of the property located at 700 Main Street, Westbury, New York, Compl. ¶¶ 7, 9, and that the property was designated in the UAO as a site at which PCE was disposed within the meaning of CERCLA Section 107, *Id.* ¶¶ 23-24.[9] They allege that they have "complied with the amended UAO and Plaintiffs are incurring response costs in implementing the RI/RD as defined in the [EPA's] ROD and UAO, including but not limited to engineering fees, attorneys' fees, and other expenses and costs relating to mitigating environmental conditions[.]" *Id.* ¶ 28.

Plaintiffs also allege that response costs were incurred prior to the issuance of the UAO that are associated with remediation of the Eastern Plume and OU-1 Deep Plume and will continue

---

[9] A facility is defined in part as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located[.]" 42 U.S.C. § 9601(9)(B). "Courts have interpreted 'facility' broadly." *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 554 F. Supp. 3d 448, 461 (E.D.N.Y. 2021).

to incur future response costs in implementing the UAO, as well as other costs. *Id.* ¶¶ 32, 35, 38. Further, Plaintiffs assert that these costs were consistent with the National Contingency Plan. *Id.* ¶ 51.

As Plaintiffs argue, CERCLA does not impose a heightened pleading standard of Rule 9(b). *See, e.g., B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2d Cir. 1996), *overruled on other grounds by New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682, 685 (2d Cir. 2003). Rule 8 requires only that a plaintiff's complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy this standard, the complaint must at a minimum "'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)). Defendants have not raised any specific arguments identifying deficiencies in the complaint that would lead the Court to conclude that it fails to meet the pleading standard under Rule 8. For these reasons, the Court finds that Plaintiffs have adequately pleaded each element of its § 107 claims. *See, e.g., Brooklyn Union Gas Co.*, 554 F. Supp. 3d at 463-64, 467 (collecting cases and noting that "an allegation that a plaintiff has incurred and will continue to incur expenses and costs," that those are "consistent with the NCP" sufficiently alleges recoverable response costs under § 107) (cleaned up).

## F. Declaratory Judgment Claims

Defendants argue that Plaintiffs' third and fourth causes of action for declaratory judgment also fail because they are contingent upon their CERCLA claims for monetary relief. Defs.' Mem. at 6, 23-24. Defendants also argue that Plaintiffs' fifth cause of action under the DJA, 28 U.S.C. § 2201(a), should be dismissed as duplicative. *Id.* at 6. Plaintiff argues that because it has properly pled a viable § 107 claim, Defendants' motion to dismiss the third and fourth causes of action for

19

declaratory judgment under CERCLA §§ 113(g)(2) and 107(a)(4)(b) must be denied.  Pls.' Mem. at 18-19.  Plaintiff concedes that if its § 113(f)(1) claim is dismissed, its fifth cause of action for declaratory judgment under the DJA fails.  *See id.* at 19.

"CERCLA section 113(g)(2) requires a district court to 'enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.'"  *New York v. Solvent Chemical Co. Inc.,* 664 F.3d 22, 25 (2d Cir. 2011) (quoting 42 U.S.C. § 9613(g)(2)).  Because Plaintiff has sufficiently alleged a CERCLA § 107 claim, the Court declines to dismiss Plaintiffs' contribution claims brought under §§ 113(g)(2) and 107(a)(4)(b).  *See 101 Frost St.*, 2019 WL 4415387, at *11 (declining to dismiss declaratory judgment claim under § 113(g)(2) where Plaintiffs had a valid cause of action for certain costs under § 107).  Having dismissed Plaintiffs' § 113(f)(1) claim, Plaintiffs' cause of action under the DJA is also dismissed.  *See Brooklyn Union Gas Co.*, 554 F. Supp. 3d at 468 ("A plaintiff cannot maintain a claim for a declaratory judgment where the underlying substantive claim has been dismissed since the Declaratory Judgment Act only creates a procedural mechanism and not an independent cause of action.").

**CONCLUSION**

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted in part and denied in part. The Court grants Defendants' motion as to Plaintiffs' second and fifth causes of action and denies the motion as to all remaining claims. Accordingly, Plaintiffs' claims for contribution under CERCLA § 113(f)(1) and for declaratory judgment under the DJA, 28 U.S.C. § 2201(a), are dismissed and Plaintiffs' remaining claims shall proceed to trial.

It is further ordered that the parties shall file a proposed Joint Pre-Trial Order no later than November 20, 2025.

SO ORDERED.

_/s/_____
ORELIA E. MERCHANT
United States District Judge

September 20, 2025
Brooklyn, New York